# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| ATLAS AIR, INC., § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 3:17-CV-1980-BH | |
| § | | |
| BISKAY HOLDINGS LLC, § | | |
| Defendant. § | Consent Case | |

## MEMORANDUM OPINION AND ORDER

By consent of the parties and order of transfer dated September 15, 2017 (doc. 13), this matter has been transferred for the conduct of all further proceedings and the entry of judgment. Before the Court is *Plaintiff Atlas Air's Motion for Summary Judgment*, filed February 6, 2018 (doc. 15). Based on the relevant filings, evidence, and applicable law, the motion is **GRANTED**.

## I. BACKGROUND

On July 26, 2017, Atlas Air, Inc. (Plaintiff) filed this lawsuit against Biskay Holdings, LLC (Defendant) alleging claims for breach of contract, and alternatively, unjust enrichment, restitution, and "for money had and received." (doc. 1 at 1, 3-4.)[1]

Based on prior oral and email discussions for an order of aircraft galley carts, Defendant sent Plaintiff an invoice on April 28, 2015. (docs. 17 at 4-5, 8; 21 at 3, 6.) The invoice provided for 300 "Full Size Galley Cart for 747 Aircraft - Comparable to Jamco Model F-Type 105 without mushroom tie down assembly Current Lead time would be 12–14 weeks ARO and drawing approval," to be shipped on August 25, 2015, at $795 for each cart, for a total of $238,500. (doc. 17 at 4-5, 8.) Defendant's president avers that "[i]n none of the emails or phone conversations . . .

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

leading up to the order and payment of the carts, was it ever requested or called-out that the carts needed to be certified in any manner," and its "understanding all along [was] that the equipment was going to be used on a transport freighter and did not need all of the certification." (doc. 21 at 3-4.)

Defendant emailed Plaintiff a "top level drawing" for signature on May 13, 2015, requesting that it "review dimensions, sign and return." (*Id.* at 7-9.) The dimensions corresponded with "Jamco Full Size Cart JL-105-11 per CMM 25-36-11, which was the manual provided by James Lynch with the exception of the mushroom Tie-down." (*Id.* at 7.) "The construction drawing of the carts did specify to meet [Federal Aviation Regulation] 25.853 and burn cert[ificate] construction per STCA23FW which is the construction of the STC cart . . . because [Defendant] agreed to use construction methods approved and burn cert's approved." (*Id*. at 3-4, 9.) On May 14, 2015, Plaintiff inquired about when the cart would "be available for the first article inspection." (*Id.* at 7.) Plaintiff signed the drawing to reflect its approval on May 21, 2015. (*Id.* at 9.) On June 9, 2015, Plaintiff paid the full $238,500 by wire transfer, even though Defendant "only requested a 25% deposit." (docs. 17 at 5, 10; 21 at 3, 7.)

On July 30, 2015, Plaintiff advised Defendant of its color preference and requested samples, and Defendant responded that it would be sending color matches. (doc. 21 at 11-12.) Defendant also represented that an individual named James Hock would be coming out in the next few weeks as it began assembly of the carts, and that "[e]verything was moving along well," but it was "waiting on caster delivery to complete out all 300 carts." *(Id.)* Plaintiff notified Defendant of its color selection on August 19, 2015. (*Id.* at 10.) On August 26, 2015, Defendant requested Plaintiff's logo information and provided a sample label. (*Id.*)

Defendant "produced a First Article cart for [Plaintiff] to review and make changes where

2

allowable in October-November 2015." (*Id*. at 4, 7-8, 13-14.) The first article cart was apparently delivered on October 15, 2015, and Plaintiff rejected it because it lacked Federal Aviation Administration (FAA) approval. (*Id*. at 4, 13-14.) Defendant "decided to try to solve that problem for [Plaintiff] even though it was not part of the original agreement," and it had FAA approval and was obtaining "facilities approval" when Plaintiff informed it that the carts also needed Technical Standard Orders (TSO) approval. (*Id*. at 4.) This change was allegedly unexpected and "occurred after [Defendant was] well down the road to completing the order." (*Id*.) Once Plaintiff advised it of what it was requesting in the way of certification, Defendant "tried to accommodate [its] request with the local [Aircraft Certification Office]." (*Id*.)

On May 25, 2016, Defendant advised Plaintiff that it had carts ready to ship, but that it was not able to release them yet "due to FAA hold up." (*Id*. at 15.) The email stated that Defendant needed Plaintiff's engineer to provide "some drawings and clarification on the galleys of Aircraft – N464MC and N465MC. [It had] the CMM pages provided 25-33-41 but [was] in need of installation data in order to cross reference the STC for the Jamco galley." (*Id.*) Defendant had been in contact with the Boeing Company, but it was not able to answer questions, and Defendant "need[ed] to obtain this information to complete certification required by FAA to install onboard the aircraft." (*Id.*) Defendant requested contact information for Plaintiff's Boeing representative and authorization to speak with him so it could "resolve this issue or at least move forward to a resolution." (*Id.*) On June 1, 2016, Plaintiff sent Defendant an email stating, "No update on the carts and where are the containers we wanted?" (*Id.*)

At some point in 2016, Defendant sent Plaintiff 160 carts that were "were boxed and tagged to go into service" as FAA-compliant "[a]t the insistence of employees of [Plaintiff] being very

3

upset as their company had already paid for the equipment," but it was "understood that the carts were not considered airworthy" and were supposed to be stored until FAA approval was granted. (docs. 17 at 5; 21 at 4-5.) The parties do not dispute that the carts were not FAA-compliant, Plaintiff rejected them, and Defendant accepted their return. (docs. 17 at 5; 21 at 4.)

In May 2017, Plaintiff received a second shipment of 48 carts, which "were certified by the FAA only for use with a Lockheed Martin L-1011 series aircraft, and not the Boeing 747 series aircraft, as specified in the invoice." (docs. 17 at 5.) Plaintiff informed Defendant of the defect, and Defendant "confirmed that the carts were not certified as FAA compliant for use with Boeing 747 series aircraft." (*Id.* at 6.) "Without the proper certification, the carts are unusable by [Plaintiff]". (*Id.*) Plaintiff "sought instruction . . . to return the carts, but [Defendant] has not provided the relevant information, following a change in [Defendant's] shipping address." (*Id.*)

On June 22, 2017, Plaintiff sent Defendant a demand for information regarding the status of the order. (doc. 17 at 16.) The demand stated that it had yet to receive any FAA-compliant carts from Defendant, and that Defendant was not being responsive to requests for information. (*Id.*) It gave Defendant a deadline of June 30, 2017, to provide information about the status of the carts and an acceptable plan to provide the carts in the near term. (*Id.*) Otherwise, it would declare Defendant in breach of the contract and take legal action. (*Id.*) Plaintiff avers that it "has not received a single galley cart compliant with the terms of the contract" as of the date of filing its summary judgment motion. (*Id.* at 6.) Defendant counters that it has "spent an exorbitant amount of time and money in manpower and engineers trying to accommodate a request made by [Plaintiff] after the fact," including spending "over $58,000.00 in custom tooling dies to fabricate the carts." (doc. 21 at 5.)

On February 6, 2018, Plaintiff filed its motion for summary judgment on the claims asserted

4

in its complaint. (doc. 16.) It seeks "damages in an amount not less than $238,500, plus applicable pre-judgment and post-judgment interest." (*Id*. at 10.) With a timely filed response and reply, this motion is ripe for determination. (docs. 20; 22.)

## II. EVIDENTIARY OBJECTION

Defendant objects and moves to strike the statements in paragraph two of the Declaration of Lawrence B. Gibbons (Gibbons Declaration) "under the hearsay rule." (doc. 20 at 3; *see* doc. 17 at 4.) Plaintiff did not respond to this objection. (*See* doc. 22.)

Except in limited circumstances, an out-of-court statement offered to prove the truth of the matter asserted is hearsay, and subject to certain exceptions, is not admissible as evidence. *See* Fed. R. Evid. 801–05. The proponent of hearsay bears the burden of demonstrating that an exception to the hearsay rule applies. *See Broadcast Music, Inc. v. Tex Border Mgmt., Inc.*, No. 3:10-CV-2524-BH, 2012 WL 4119111, at *4 (N.D. Tex. Sept. 18, 2012).

Paragraph two of the Gibbons Declaration states:

> Prior to April 28, 2015, an Atlas employee under my supervision called Biskay Holdings LLC . . . regarding an order for galley carts for use in our Boeing 747 aircraft. This person spoke with Gale Kelley, whom I understood to be President of Biskay. During the course of this telephone conversation, Biskay and Atlas reached an oral agreement that Biskay would deliver 300 full size, FAA-compliant galley carts for use in our Boeing 747 aircraft for a total purchase price of $238,500 . . . .

(doc. 17 at 4.) It appears this information was gained from what Plaintiff's employee told the declarant about the call with Defendant's president. These statements were offered to prove that the verbal agreement included the requirement that the "[c]arts were to be FFA-approved to be used on Boeing 747 aircraft." (doc. 16 at 5 (citing *id*.).) Because this paragraph consists of out-of-court statements offered to prove the truth of the matter asserted, it is inadmissible hearsay. Plaintiff does not argue or meet its burden to demonstrate that an exception to the hearsay rule applies. *See*

5

*Sowders v. United Corp.*, No. SA-05-CA-309-OG, 2007 WL 3171797, at *1 (W.D. Tex. Aug. 15, 2007). Defendant's objection to paragraph two as inadmissible hearsay is sustained, and the motion to strike this paragraph is granted.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In a case in which "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). This is a "heavy" burden for movant. *Copeland v. D&J Constr. LLC*, No. 3:13-CV-4432-N-BH, 2016 WL 1212128, at *2 (N.D. Tex. Feb. 16, 2016), *adopted by*, 2016 WL 1182620 (N.D. Tex. Mar. 28, 2016); *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04–CV–1866–D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.

*Celotex Corp.*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249.

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).[2]

## IV. ANALYSIS

Plaintiff moves for summary judgment on its breach of contract claim. (doc. 16 at 7-8.)

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach.[3]

---

[2] Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[3] "It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). In this diversity case, the contract was made in Texas and was to be performed in Texas, (doc. 17 at 8), and the parties do not dispute that Texas law applies. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he

7

*Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp. v. Hi-Class Bus. Sys.*, 184 S.W.3d 760, 669–70 (Tex. App.—Dallas 2005, pet. denied). "Whether a party has breached a contract is a question of law." *Gardocki v. J.P. Morgan Chase Bank*, No. 12-2254, 2014 WL 12537076, at *4 (S.D. Tex. June 11, 2014) (citing cases). Additionally, damages are "an essential element of a cause of action for breach of contract under Texas law," *Lexxus Intern., Inc. v. Loghry*, 512 F. Supp. 2d 647, 666 (N.D. Tex. 2007), and "[t]he plaintiff bears the burden of demonstrating that he suffered a loss as a result of the breach." *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003) (citing *Taub v. Houston Pipeline Co.*, 75 S.W.3d 606, 617 (Tex. App.—Texarkana 2002, pet. denied)).

To meet its summary judgment burden, Plaintiff provides in relevant part the Gibbons Declaration, a copy of the invoice from Defendant regarding the order for galley carts, a copy of a wire transfer confirmation sent from Plaintiff to Defendant, FAA registration information for airplane parts, and a demand letter sent by Plaintiff to Defendant. (*See*. doc. 17.) The invoice describes a verbal purchase order for 300 "Full Size Galley Cart[s] for 747 Aircraft" for $238,500, to be shipped on August 25, 2015. (*Id.* at 8.) The Gibbons Declaration states that the invoice confirmed the terms of the parties' agreement, and both the declaration and the wire transfer confirmation establish that Plaintiff sent a payment of $238,500 to Defendant after receiving the invoice. (*Id.* at 4, 10.) The Gibbons Declaration also states that Plaintiff received 160 galley carts

---

law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."); *see also Faloona by Fredrickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) (citing *Duncan*, 665 S.W.2d at 421) (contacts to take into account in determining the applicable law include the place of contracting and place of performance).

from Defendant that it rejected because they were not FAA-compliant and Defendant accepted their return, it subsequently received a second shipment of 48 carts that it also sought to return after notifying Defendant that they were not acceptable because the carts were not FAA-certified for use on "the Boeing 747 series aircraft, as specified on the invoice," and Plaintiff "has not received a single FAA-compliant cart matching the specifications listed on the invoice." (*Id*. at 5-6, 16.)

This evidence is sufficient to establish the essential elements of Plaintiff's breach of contract claim: the invoice shows that Defendant agreed to sell 300 galley carts to Plaintiff "for 747 aircraft" for $238,500, the wire transfer confirmation shows that Plaintiff performed by paying the full amount for the carts, and the Gibbons Declaration shows that Defendant breached the agreement because it failed to deliver 300 "Full Size Galley Cart[s] for 747 Aircraft" as required under the terms of the invoice. *See Mullins*, 564 F.3d at 418 (citing *Aguiar*, 167 S.W.3d at 450) (stating the elements of a breach of contract claim). The wire transfer confirmation and Gibbons Declaration additionally show that Plaintiff sustained damages as a result of the breach because it paid the full invoice for the carts, and has yet to receive the full order of 300 carts in compliance with the terms of the invoice. *See Sport Supply Group, Inc.*, 335 F.3d at 465 (noting that it is the plaintiff's burden to show that damages resulted from the breach).

With regard to the amount of damages it incurred, Plaintiff presented the Gibbons Declaration, which establishes that Plaintiff paid $238,500 for the carts under the terms of the invoice, and that it is entitled to recover this amount because it rejected both sets of delivered carts, notified Defendant of the rejection, and returned or sought to return the carts.[4] Under the Texas

---

[4] The Gibbons Declaration states that Defendant accepted the return of the first shipment of 160 carts. (doc. 17 at 5.) Although it is unclear if Defendant accepted the return of the second shipment of 48 carts, the declaration shows that Plaintiff notified it that the carts were not acceptable and sought to return them. (*Id*. at 6.)

Business and Commerce Code (the Code), where a buyer rightfully rejects goods sent by a seller, "the buyer may cancel and . . . [recover] so much of the price as has been paid" under the agreement.[5] Tex. Bus. & Com. Code § 2.711(a); *see Vemex Trading Corp. v. Tech. Ventures, Inc.*, 563 F. App'x 318, 327 (5th Cir. 2014) (affirming decision that the plaintiff was entitled to recover the amount it paid under the contract pursuant to Tex. Bus. & Com. Code § 2.711(a)). In order for rejection to be rightful, the "[r]ejection of goods must be within a reasonable time after their delivery," and the buyer must seasonably notify the seller of the rejection. Tex. Bus. & Com. Code § 2.602(a); *Transoil (Jersey) Ltd. v. Belcher Oil Co.*, 950 F.2d 1115, 1120 (5th Cir. 1992). Accordingly, Plaintiff has met its summary judgment burden.

The burden now shifts to Defendant to identify evidence in the record raising a genuine issue of material fact that Plaintiff is not entitled to recover on its breach of contract claim. *See Celotex Corp.*, 477 U.S. at 324. Defendant "admits" that "there was an oral agreement for the fabrication of special-order carts," the drawing it provided "specifies FAA grade material," and "it invoiced Plaintiff for the carts." (doc. 20 at 3-4.) The declaration of its president concedes that it supplied an invoice for the carts, and Plaintiff paid the full amount of the invoice. (doc. 21 at 3.) It does not dispute that the parties' agreement was for 300 carts, and that it did not deliver a total of 300 carts to Plaintiff. (*Id*. at 5; doc. 20 at 4.) Its president's declaration establishes that the parties never agreed "that the carts needed to be certified in any manner," but that it "decided to try to solve that

---

[5] The Code "applies to transactions 'in goods.'" *Propulsion Techs., Inc. v. Attwood Corp.*, 369 F.3d 896, 900 (5th Cir. 2004) (citing Tex. Bus. & Com. Code Ann. § 2.102). Goods are defined as "'all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale.'" *Id*. (quoting Tex. Bus. & Com. Code Ann. § 2.105(a)).

problem for them even though it was not part of the original agreement." (doc. 21 at 3-4.)[6] The declaration also shows only that Defendant produced a first article cart for Plaintiff and subsequently shipped it 160 carts that "were not considered airworthy . . . ." (*Id*. at 4.)

Defendant argues that "Plaintiff fail[ed] to offer evidence that (a) [it] performed, or (b) that Defendant failed to perform." (doc. 20 at 4-5.) It claims that it did not breach the agreement, that Plaintiff breached the agreement when it "erroneously rejected" carts that conformed to the terms of the agreement, and that "[t]he matter of whether the carts were conforming to the verbal agreement is an issue of material fact." (*Id*.) The only admissible evidence in the record regarding whether the parties agreed that the 300 carts were required to be certified or FAA-compliant is Defendant's president's declaration, which states that there was no such agreement. (doc. 21 at 3-4.) Even so, Defendant has not provided any evidence to support its claim that the carts that it delivered conformed to the terms of the agreement reflected in its invoice. As noted, the invoice from Defendant specifically describes the carts as "Full Size Galley Cart[s] for 747 Aircraft." (doc. 17 at 8.) The declaration does not specifically aver that the first shipment of 160 carts conformed to the terms of the invoice, or to the drawing. (*See* doc. 21 at 3-5.) Defendant provides no evidence to counter Plaintiff's evidence that the 48 carts in the second shipment were not for a Boeing 747 aircraft, but for a different type of aircraft. It also does not provide any evidence to support its claim that Plaintiff's rejection of the carts was erroneous. Moreover, Defendant does not dispute that it

---

[6] Although the Code permits parties to modify their agreement without consideration as long as the modification is in good faith, *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 849 (S.D. Tex. 2011), neither party argues nor presents any evidence that Defendant's attempts to accommodate Plaintiff constituted a modification or attempted modification to the agreement. (*See* docs. 16-17; 20-22.)

11

failed to deliver the full order of 300 carts as required under the terms of the agreement.[7] Nor does it dispute that Plaintiff performed by fully paying the invoice. Finally, it presents no evidence to dispute that Plaintiff is entitled to recover the $238,500 it paid for the carts as a result of its breach, nor any evidence showing a genuine issue of material fact as to that amount.[8]

In sum, Defendant failed to sustain its burden to identify evidence in the record sufficient to create a genuine issue of material fact on any element of Plaintiff's breach of contract claim. *See Case Corp.*, 184 S.W.3d at 669–70 (breach occurs when a party fails to perform).[9] Plaintiff is entitled to summary judgment as a matter of law on this claim.[10]

## V. CONCLUSION

Plaintiff's motion for summary judgment is **GRANTED**, and Plaintiff is entitled to recover the $238,500 it paid Defendant under the terms of the agreement, plus applicable pre-judgment and post-judgment interest.

---

[7] Defendant does not argue or present any evidence that it withheld delivery of the remainder of the 300 carts based on Plaintiff's "erroneous" rejection of the carts that were delivered. (*See* docs. 20; 21.) Under section 2.703 of the Texas Business and Commerce Code, "which enumerates the seller's remedies," when a "buyer wrongfully rejects or revokes acceptance of goods . . . the aggrieved seller may . . . withhold delivery of such goods." Tex. Bus. & Com. Code Ann. § 2.703; *Serna, Inc. v. Harman*, 742 F.2d 186, 191 (5th Cir. 1984).

[8] Notably, although Defendant's president's declaration states that it has "spent an exorbitant amount of time and money in manpower and engineers trying to accommodate a request made by [Plaintiff] after the fact," including spending "over $58,000.00 in custom tooling dies to fabricate the carts," Defendant does not make any arguments regarding reducing or offsetting Plaintiff's damages on this basis. (doc. 21 at 5; *see* doc. 20.)

[9] While Defendant asserted various affirmative defenses to Plaintiff's contract claim in its answer, it did not file a cross-motion for summary judgment on its defenses or even argue them in response to the summary judgment motion. (*See* docs. 7 at 3-4; 20.)

[10] Because Plaintiff is entitled to summary judgment on this basis, its alternative grounds for recovery need not be considered.

**SO ORDERED** on this 28th day of June, 2018.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE